# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| GREGORY C. KAPORDELIS, : | |
| Reg. No. 63122-053, : | DIVERSITY |
|     Plaintiff, : | 28 U.S.C. § 1332 |
| : | |
| v.  : | CIVIL ACTION NO. |
| : | 2:10-CV-69-RWS |
| GAINESVILLE SURGERY : | |
| CENTER; L.P.; HEALTHSOUTH, | |
| INC., | |
|     Defendants. | |

## ORDER AND OPINION

On October 20, 2010, this Court entered an Order dismissing the instant complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2). (Doc. 10). The matter is now before the Court on Plaintiff's motion for reconsideration [Doc. 13], and his motion for a ruling on his motion for reconsideration [Doc. 15].

I.    Analysis

In the complaint, Plaintiff set forth allegations which attempted to raise claims for breach of contract and unfair business practices against Gainesville Surgery Center, L.P. ("GSC"), a Georgia corporation, and Healthsouth, Inc. ("Healthsouth"), an Alabama corporation. Plaintiff based his claims on diversity

AO 72A
(Rev.8/82)

of citizenship pursuant to 28 U.S.C. § 1332. (Doc. 1). This Court found that both of Plaintiff's claims were barred by the statute of limitations. (Doc. 11).

Plaintiff now files a motion for reconsideration, in which he argues that: (1) his claim for unfair business practices is governed by the six-year statute of limitations for breach of contract cases, because it essentially is a claim for breach of contract; (2) the Court's rejection of the mailbox rule as it applies to this case was inappropriate; and (3) "the continuing violations doctrine" and/or the discovery rule applies to equitably toll his claims. The Court disagrees.

A.  Motions for Reconsideration

The Court first notes that the Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. Local Rule 7.2 provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." L.R. 7.2E, N.D. Ga. A party may move for reconsideration only when one of the following has occurred: (1) the discovery of new evidence; (2) an intervening development or change in the controlling law; or (3) the need to correct a clear error or manifest injustice. *Adams v. IBM Corp.*, No. 1:05-CV-3308-TWT, 2007 WL 14293, at *1 (N.D. Ga. Jan. 2, 2007) (Thrash, J.); *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps*

*of Engineers*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (O'Kelley, J.), *aff'd*, 87 F.3d 1242 (11th Cir. 1996).

Because reconsideration may only occur under those limited circumstances, a motion for reconsideration normally "is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time." *Preserve Endangered Areas of Cobb's History, Inc.*, 916 F. Supp. at 1560. In other words, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. National Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000) (Murphy, J.). *See also Godby v. Electrolux Corp.*, Nos. 1:93-CV-0353-ODE, 1:93-CV-126-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994) (Evans, J.) ("A motion for reconsideration should not be used to reiterate arguments that have previously been made. . . .[It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court [has] already thought through – rightly or wrongly.") (citations omitted); *In re Hollowell*, 242 B.R. 541, 542-43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration should not be used to relitigate issues already

3

decided or as a substitute for appeal. . . .Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued.") (citations omitted).

In light of Plaintiff's *pro se* status and the fact that the Court dismissed this case on frivolity review, the Court will consider the issues raised in Plaintiff's motion since he previously had not had the opportunity to assert them. The Court finds, however, that nothing that Plaintiff has presented in his motion changes this Court's ultimate opinion that Plaintiff's claims are time-barred.

    A.    <u>Date of Filing and the Mailbox Rule</u>

Plaintiff challenges two of the Court's findings: (1) that the prisoner mailbox rule did not apply to Plaintiff's complaint; and (2) based on the Clerk's file stamp, the date the complaint was filed was April 20, 2010. (Doc. 11, at 5-7).

Plaintiff first attempts to dissuade the Court of its decision that the mailbox rule does not apply to his diversity action. In support of this argument, Plaintiff relies on *Garvey v. Vaughn*, 993 F.2d 776 (11th Cir. 1993), as authority for the proposition that his constitutional right of access to the courts would be denied if the Court were not to apply the prisoner mailbox rule to this diversity action. In *Garvey*, the Eleventh Circuit extended the federal mailbox rule to claims under

4

§ 1983 and the Federal Tort Claims Act. *See generally, Garvey*, 993 F.2d 776. It is important to note that the claims in *Garvey* were based upon federal question jurisdiction under 28 U.S.C. § 1331, and that the Eleventh Circuit has not determined whether the prison mailbox rule even would apply in a diversity action. More importantly, it is not clear that federal, rather than state law, governs whether the mailbox rule would apply here.

Indeed, in diversity cases the Eleventh Circuit has "look[ed] to the Georgia courts' definition of when an action commences." *Cambridge Mut. Fire Ins. Co.*, 720 F.2d 1230, 1233 n.3 (11th Cir. 1983). Moreover, the Court is aware of at least one court that has determined that the state's mailbox rule applies to a diversity action, reasoning that "state law, not federal, controls the determination of when an action is commenced and the tolling of any statutes of limitation." *See Spatgen v. R.J. Reynolds, Inc.*, No. 4:03-CV-40029, 2003 WL 21516579, at *4 (S.D. Iowa June 25, 2003) (rejecting plaintiff's claim that the federal prisoner mailbox rule applied to his diversity action). The Southern District of Iowa's reasoning in *Spatgen* is persuasive, especially given that in diversity cases the outcome of the litigation in federal court should be the same "so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *See Guaranty Trust*

5

*Co. of N.Y. v. York*, 326 U.S. 99, 109, 115-16 (1945) (holding state statutes of limitations are substantive laws and must be followed by federal courts in diversity actions); *see also Continental Cas. Co. v. City of Jacksonville*, 283 F. App'x 686, 688 (11th Cir. 2008) (stating that in a diversity action, state law must apply to any issue not governed by the Federal Constitution, treaties, or Act of Congress).  As such, the Court finds that Georgia law governs whether the prison mailbox rule applies in this case.  Long before Plaintiff filed the instant complaint, Georgia courts held that the prisoner mailbox rule "'does not apply to any nonhabeas criminal or civil filings.'"  *Price v. State*, 686 S.E.2d 406, 407 n.1 (Ga. Ct. App. 2009) (citing *Riley v. State*, 626 S.E.2d 116 (Ga. 2006)).  *See also Roberts v. Cooper*, 691 S.E.2d 875, 877 (Ga. 2010) ("[T]he mailbox rule does not apply to all pro se prisoner litigants.").  As Plaintiff's complaint raises claims for breach of contract and unfair business practices, the prisoner mailbox rule would not apply to his claims were he in state court.  As such, the date of filing governs whether his complaint is time-barred in this Court.

The date of filing, however, is also an issue Plaintiff challenges.  Plaintiff has provided this Court with tracking information from the United States Postal Service that he contends indicates that the Clerk of this Court actually received the

6

complaint on April 15, 2010, rather than on April 20, 2010, the date it was file-stamped. (Doc. 14, at 8). Pretermitting whether Plaintiff's document proves that the tracking information is, in fact, what Plaintiff purports it to be, for the sake of argument this Court will use April 15, 2010, as the date Plaintiff filed the complaint in this Court. As discussed below, however, both of Plaintiff's claims remain untimely.

    B.    Plaintiff's Claims

        1.    Unfair Business Practices

Plaintiff bases his claim for unfair business practices on his allegations that Defendants conspired to, and did, take over his business, thereby leaving him with a non-viable company and no means of practicing medicine. In the motion for reconsideration, Plaintiff asks this Court to apply the six-year limitation period for breach of contract claims to his unfair business practices claim. In Georgia, however, such claims are usually grounded in tort. *See*, *e.g.*, *Travelers, Inc. v. Patterman*, 527 S.E.2d 187, 251 (Ga. 2000) (treating action for unfair business practices as a tort claim). Moreover, nothing Plaintiff raises in his motion for reconsideration changes this Court's opinion that his claim is most analogous to a suit for damages for the conversion or destruction of property with a four-year

7

statute of limitations. *Compare, e.g., Dale v. City Plumbing & Heating Supply Co.*, 146 S.E.2d 349, 351-52 (Ga. Ct. App. 1965) (holding filing of false affidavits as materialman's liens which resulted in corporation's bankruptcy and owner's loss of salary constituted injury to property right with a four-year statute of limitations). As Plaintiff received notice of the alleged unfair business practices on April 16, 2004, his claim, filed more than four years after the alleged tortious acts, is untimely.[1]

### 2. Breach of Contract Claim

Plaintiff further argues that his breach of contract claim should accrue on the date that he discovered the breach, which was on April 16, 2004, rather than the date of the actual breach two days earlier. Georgia law, however, squarely defeats Plaintiff's argument. *See Hamburger v. PFM Capital Mgmt., Inc.*, 649 S.E.2d 779, 782 (Ga. Ct. App. 2007) (holding that Georgia has no discovery rule that tolls the statute of limitations in a breach of contract claim; rather, the claim accrues when

---

[1] In connection with his unfair business practices claim, Plaintiff argues that the statute of limitations should accrue based on his discovery of the facts and/or based on the continuing violation doctrine – both of which would render the accrual of his claims to be April 16, 2004. The Court notes that it already applied the discovery rule to Plaintiff's unfair business practices claim and determined that it did, in fact, accrue on April 16, 2004, when he discovered the defendants' actions. (*See* Doc. 11, at 4).

8

the contract is breached); *accord, Moore v. Department of Human Resources*, 469 S.E.2d 511, 512-13 (Ga. Ct. App. 1996). Plaintiff's breach of contract claim therefore accrued on April 14, 2004, and the limitation period ended six years later on April 14, 2010. *See* O.C.G.A. § 9-3-24. To the degree that Plaintiff's complaint was received by the Clerk on April 15, 2010, it was received one day after the limitation period expired. As such, Plaintiff's breach of contract claim is also untimely.

Insofar as Plaintiff asserts that the "continuing violation doctrine" applies to his breach of contract claim, his argument is misplaced. "The critical distinction in the continuing violation analysis . . . is whether the plaintiff[] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (quoting *Knight v. Columbus*, 19 F.3d 579, 580-81 (11th Cir. 1994). The continuing violation doctrine, however, was developed by federal courts in connection with Title VII of the federal Civil Rights Act. *Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 223 (6th Cir. 1991). As discussed with regard to application of the mailbox rule, state law determines when an action is commenced for tolling purposes, *see Walker v.*

9

*Armco Steel Corp.*, 446 U.S. 740, 750 (1980), and it is not clear that Georgia has ever applied the "continuing violations doctrine." Regardless, the Court finds that defendants' alleged breach of contract was a one-time act with continued consequences and therefore the limitation period would not be tolled. As such, the Court finds that Plaintiff's complaint is barred by the statute of limitations.[2]

## II. Conclusion

---

[2] The Court would also note that it is not clear that complete diversity of citizenship exists, as Plaintiff must establish that his domicile was not in the State of Georgia prior to his incarceration since Defendant GSC is a Georgia corporation. *See* 28 U.S.C. § 1332(a) (requiring for diversity of citizenship that every plaintiff be diverse from every defendant); *Palmer v. Hospital Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994) ("Diversity jurisdiction, as a general rule, requires complete diversity-every plaintiff must be diverse from every defendant."); *Mas v. Perry*, 489 F.2d 1396, 1398-99 (5th Cir. 1974) ("It has long been the general rule that complete diversity of parties is required in order that diversity jurisdiction obtain; that is, no party on one side may be a citizen of the same State as any party on the other side."). Although Plaintiff claims that he is a "resident of Florida," it appears from this Court's records that prior to his incarceration, Plaintiff's primary domicile was in Georgia. *See Kapordelis v. Carnes*, Civil Action No. 1:11-CV-1769-CAP (N.D. Ga.) (Docket No. 1, at 5) (Plaintiff's own statement in his complaint that he "lived in Gainesville, Georgia" at the time he was arrested); *Kapordelis v. Danzig*, Civil Action No. 1:09-CV-2653-ODE (N.D. Ga.) (Docket No. 1, at 4, 8, Plaintiff's discussion of the allegedly unlawful search of his home in Gainesville, Georgia; Docket No. 1, at 10, Plaintiff's indication that he has maintained his residence in Florida "*in abstentia*" since 2006; Docket No. 1 at 83, Plaintiff's indication that at the time he was arrested, the only place he was licensed to practice medicine was in Georgia). As such, complete diversity of citizenship is also in question.

AO 72A (Rev.8/82)

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a ruling on his motion for reconsideration [Doc. 15], is **GRANTED**, and Plaintiff's motion for reconsideration [Doc. 13] is **DENIED**.  This Court notes that, pursuant to the local rules, "*parties shall not file motions to reconsider the court's denial of a prior motion for reconsideration*," L.R. 7.2E N.D. Ga. (emphasis added), and any further motions to reconsider shall be summarily denied.

**IT IS SO ORDERED,** this   19th   day of August, 2011.

*[signature]*

**RICHARD W. STORY**
United States District Judge